UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.  21-CV-80235-CANNON/REINHART

JOSEPH RAGUSA,

                    Plaintiff,

v.

KILOLO KIJAKAZI
Acting Commissioner for Social Security,

                    Defendant.

_____/

## REPORT AND RECOMMENDATION ON MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 16, 17)

This matter is before the Court on the parties' cross motions for summary judgment filed by Joseph Ragusa ("Plaintiff") (ECF No. 16) and Kilolo Kijakazi, Acting Commissioner of the Social Security Administration ("Defendant" or "Commissioner") (ECF No. 17). Under the limited standard of review that governs this case, I find that the motions are ripe for disposition and that substantial evidence supports the ALJ's determination. For the reasons stated below, Plaintiff's Motion for Summary Judgment (ECF No. 16) should be **DENIED**, Defendant's Motion for Summary Judgment (ECF No. 17) should be **GRANTED**, and the decision of the ALJ should be **AFFIRMED**.

## BACKGROUND

On January 19, 2018, Mr. Ragusa filed an application for disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") alleging a period of disability beginning on January 3, 2017. R. 15.[1] Mr. Ragusa had a hearing before an Administrative Law Judge ("ALJ") on February 7, 2020. R. 15, 66–96. Mr. Ragusa was represented by counsel at the hearing. *Id.* Subsequently, the ALJ requested medical interrogatories from a medical expert. R. 15. On August 19, 2020, Mr. Ragusa appeared before the ALJ for a second hearing; he was again represented by counsel. R. 15, 32–65. The ALJ denied Mr. Ragusa's application for benefits in a decision dated September 10, 2020 (R. 15–26), and the Appeals Council denied his request for review on December 3, 2020. R. 1–5.

The record contains the following facts adduced from Mr. Ragusa's testimony at the hearing and the testimony of a vocational expert ("VE").[2] Mr. Ragusa was 48 years old at the time of his alleged disability onset. R. 24. He has at least a high school education with past relevant work experience as a cook. *Id.* Mr. Ragusa alleged the following physical or mental conditions limiting his ability to work: congestive heart failure, asthma, migraines, diabetes, high blood pressure, anxiety disorder, PTSD, fibromyalgia, deep vein thrombosis, and neuropathy. R. 373.

---

[1] Citations preceded by "R." are to the administrative record filed at ECF No. 14.

[2] Mr. Ragusa takes issue only with the ALJ's decision at step five of the sequential evaluation process as it relates to testimony from the vocational expert. He does not dispute the findings made by the ALJ at steps one through four.

*The Five Step Framework*

A person who applies for social security disability benefits must prove his disability before being entitled to those benefits.  *See* 20 C.F.R. § 404.1512.  In determining disability, the ALJ considers a five-step evaluation process.  *See* 20 C.F.R. § 404.1520.  First, the claimant must prove he is not currently engaged in substantial gainful activity.  *Id.*  Second, the claimant must prove his impairment is "severe" in that it "significantly limits his physical or mental ability to do basic work activities . . . ." *Id.* Third, the claimant must show he is disabled by proving that his impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1.  *Id.*  Before considering step four, the ALJ must determine the claimant's residual functional capacity (RFC), meaning his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments.  *Id.*  At step four, the claimant bears the burden of proving that he does not have the RFC to perform past relevant work.  *Id.*  If the claimant is successful at all four of the preceding steps, the burden shifts at step five to the Commissioner to prove, considering claimant's RFC, age, education, and past work experience, that he is capable of performing other work.  *Id.*  If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he cannot, in fact, perform that work.  *Id.*

*Vocational Expert*

In Mr. Ragusa's hearing before the ALJ, the VE testified that there are jobs in the national economy for an individual of Mr. Ragusa's age, education, work

experience, RFC, and limitations ("He can occasionally climb stairs/ramps, balance, stoop, kneel, crouch, and crawl, but never climb ladders/ropes/scaffolds. [He] is limited to frequent operation of foot controls with both lower extremities. He must also avoid concentrated exposure to extreme cold/heat, humidity, wetness, fumes, odors, gases, dust and other pulmonary irritants, and avoid all exposure to unprotected heights and/or moving machinery." R. 20, 31.). Specifically, the VE testified that an individual with Mr. Ragusa's characteristics and restraints could perform the requirements of the following representative occupations:

1. Housekeeper, DOT# 323.687-014 (light, SVP 2), with approximately 102,000 jobs in the national economy;

2. Sandwich Board Carrier, DOT# 299.687-014 (light, SVP 1), with approximately 9,000 jobs in the national economy;

3. Cashier, DOT# 211.462-010 (light, SVP 2), with approximately 180,000 jobs in the national economy.

R. 25.

The VE testified about the specific methodology he used to calculate the estimated number of jobs in the national economy at each DOT code:

VE: I looked at the Bureau of Labor Statistics, and I looked at the OES, Occupational Employment Statistics groupings, and I took the number and looked at the total number of the DOTs within that grouping the Soc, and I did the average to come up with a reduced number to give a more representative, a fair representative, indicational estimate of the job DOT.

Attorney: Okay. And how do you do the averaging, how do you make that decision on how to average the numbers?

VE: Take the total number of DOT numbers within the group and divide it by the total number of the OES.

Attorney: And do you know specifically whether that takes into account in reality the numbers of jobs that actually exist because you're just taking an average, is that correct?

VE: The answer to your question is, there's no methodology that can pinpoint an exact number from day to day because jobs open and close, people get fired and hired. There only is a method that can give an estimate.

Attorney: Okay. And the estimate that – so for each job, so for instance let's just go to the first job which you indicated was a Housekeeper, there's no way to determine that DOT code exactly the amount of jobs in the national economy currently, is that correct?

VE: One can only give an estimate of a number. Again, no one can give an exact number at any given time. . . the methodology that would be used would be giving an estimate, Counsel.
.
.
.
Attorney: Okay. So on the SOC code, how many jobs are there listed under that SOC code, do you know, in the Housekeeping, as an example?

VE:. . . Okay, so within the OES there's nine groups in Housekeeping. The total groupings for that number is over 926,000. The number I provided was 180,[000], which is much lower than the total group

Attorney: And you divided that by –

VE: Nine.

Attorney: Okay, so since there are nine groups you divided 926[,000] by that, is that correct?

VE: Yes.
.
.
.
ALJ: Okay, so instead of dividing by four, you divide by nine groups. You don't take one ahead of the other or give more weight to one group than another, you just logically divide by the number of groups. Is that basically it?

VE: Correct, Yes.

R. 58–61. Mr. Ragusa's counsel raised an objection to the VE's methodology on the grounds that it is not reliable. R. 25, 61–63. The ALJ overruled the objection noting as follows:

> The vocational expert has professional knowledge and experience in job placement. Ex. D28E. He testified as to his methodology for determining job numbers, relying on the Bureau of Labor Statistics and SOC codes. He further indicated that it is in estimate of total job numbers, rather than an exact number. Accordingly, the undersigned finds vocational expert's job information is reliable.

R. 25.

*ALJ's Decision Dated September 10, 2020*

The ALJ found that Mr. Ragusa met the insured status requirements of the Social Security Act through March 31, 2021. R. 27. Following the Five Step Framework, at step one the ALJ found that Mr. Ragusa had not engaged in substantial gainful activity since January 3, 2017, the alleged onset date. R. 18. At step two, the ALJ found that Mr. Ragusa suffers from the following severe impairments: ischemic heart disease/coronary artery disease, asthma, and diabetes with neuropathy. *Id*. The ALJ found that these impairments significantly limit Mr. Ragusa's ability to perform basic work activities as required by SSR 85-28. *Id*. The ALJ also found that Mr. Ragusa suffered from the following medically determinable mental impairments: bipolar disorder, depression, and anxiety, which the ALJ found, "do not cause more than minimal limitations on the claimant's ability to perform basic mental work activities, and are therefore non-severe." *Id*. At step three, the ALJ found that Mr. Ragusa does not suffer from an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. R. 19.

The ALJ concluded that Mr. Ragusa has the residual functional capacity ("RFC") to perform light work "except he can occasionally climb stairs/ramps, balance,

stoop, kneel, crouch, and crawl, but never climb ladders/ropes/scaffolds. [He] is limited to frequent operation of foot controls with both lower extremities. He must also avoid concentrated exposure to extreme cold/heat, humidity, wetness, fumes, odors, gases, dust and other pulmonary irritants, and avoid all exposure to unprotected heights and/or moving machinery." R. 20.

At step four, the ALJ found that Mr. Ragusa does not have the RFC to perform past relevant work as a cook. R. 24. Finally, at step five, based on the VE's testimony and taking into consideration Mr. Ragusa's age, education, past work experience, and current RFC, the ALJ found that Mr. Ragusa is capable of performing other work and that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." *Id*. In conclusion, the ALJ found that Mr. Ragusa has not been disabled, as defined in the Social Security Act, from January 3, 2017 through the date of the decision. R. 25.

*Mr. Ragusa's Legal Claims*

Mr. Ragusa makes two primary arguments. First, he contends that the ALJ who heard Mr. Ragusa's case did not have lawful authority to do so because the ALJ (and the Appeals Judges) derived their authority from Andrew Saul, the acting Commissioner of the Social Security Administration at the time. ECF No. 16 at 5–7. Mr. Ragusa argues that the fact that Mr. Saul is the singular head of the agency, is removable only for cause, and serves a longer term than the President of the United States, violates the constitutional separation of powers. *Id*. Thus, Mr. Ragusa argues that by having his hearing conducted by an improperly appointed ALJ, the

government deprived him of a valid administrative adjudicatory process. *Id.* at 5. Second, Mr. Ragusa argues that the ALJ's step five finding that jobs exist in the national economy that Mr. Ragusa can perform is not supported by substantial evidence because the ALJ relied on the testimony of a VE who relied on an unreliable methodology. *Id.* at 7–16.

## **STANDARD OF REVIEW**

This Court's review of the factual findings in disability cases is limited to an inquiry into whether substantial evidence exists to support the ALJ's findings and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lewis v. Callahan*, 125 F.3d 1436 (11th Cir. 1997). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)). If the ALJ's decision is supported by substantial competent evidence from the record as a whole, a court will not disturb that decision. Neither may a court reweigh the evidence nor substitute its judgment for that of the ALJ. *See Wolfe v. Chater*, 86 F.3d 1072, 1076 (11th Cir. 1996). *See also Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). Although factual findings enjoy such deference, a court is free to review the ALJ's legal analysis and conclusions *de novo. See Ingram v. Comm'r*, 496 F.3d 1253, 1260 (11th Cir. 2007).

## DISCUSSION

### I.   Whether the Appointment of Andrew Saul Violates Separation of Powers and Renders the ALJ's Decision Constitutionally Defective

Mr. Ragusa asserts a constitutional challenge to the Social Security Commissioner's authority based on Supreme Court case *Seila Law LLC v. CFPB*, 140 S. Ct. 2183 (Jun. 20, 2020). ECF No. 16 at 5. In *Seila Law*, the Supreme Court found that the structure of the Consumer Financial Protection Bureau ("CFPB") violated the separation of powers. *Id*. at 2191. The Court ultimately held that, in light of the President's "ultimate responsibility" for use of the executive power and "active obligation to supervise" the officers to whom he has delegated authority, limitations on the President's ability to remove the Director of the CFPB thwarts that responsibility. *Id*. at 2203–04 ("The CFPB Director's insulation from removal by an accountable President . . . render[s] the agency's structure unconstitutional."). More recently, the Supreme Court cemented its findings as to the President's removal powers in *Collins v. Yellen*, 141 S. Ct. 1761, 1784 (2021). There, the Court held that a similar statutory provision protecting the Director of the Federal Housing Finance Authority ("FHFA") from removal except for cause was a violation of the separation of powers. *Id*. at 1783.

In *Collins*, the Court also held that in challenging a statutory removal restriction, a plaintiff need not show that the claimed injury is traceable to the challenged provision of law to show standing. *Id*. at 1779. Instead, it is sufficient for a plaintiff to allege injury based on the "allegedly unlawful conduct of the defendant." *Id*. In order to obtain retrospective relief, however, a plaintiff must show that the

unconstitutional provision in question "inflict[ed] compensable harm." *Id.* at 1789. The Court opined that an example of such harm could be if, for example, the President attempted to remove a Director but was prevented from doing so by a lower court decision holding that he did not have "cause" for removal, or if the President publicly stated displeasure with the Director and that he would remove the Director if not for the statute. *Id.* at 1788–89. Ultimately, the Court remanded the case for resolution of that very question: whether the provision had inflicted compensable harm on plaintiffs. *Id.* at 1789.

Applying the holdings in *Seila Law* and *Collins* to the Commissioner of Social Security, and in keeping with holdings in districts throughout the country, I agree with Mr. Ragusa that the provision for removal of the Commissioner, 41 U.S.C. § 902(a)(3), "suffers from the same defect as the removal provisions at issue in *Seila Law* and *Collins*" and therefore violates the separation of powers. *See Perez-Kocher v. Comm'r of Soc. Sec.*, No. 6:20-cv-2357, 2021 WL 6334838, at *3 (M.D. Fla. Nov. 23, 2021). *See also Tosland v. Comm'r of Soc. Sec.*, No. 3:20-cv-06085-JRC, 2021 WL 5356721, at *3 (W.D. Wash. Nov. 17, 2021) (finding that 41 U.S.C. § 902(a)(3) violates separation of powers; *Young v. Comm'r of Soc. Sec.*, No. C21-5207-BAT, 2021 WL 5177363, at *5 (W.D. Wash. Nov. 8, 2021) (finding same); *Tafoya v. Kijakazi*, No. 21-CV-00871-REB, 2021 WL 3269640, at *3 (D. Colo. July 29, 2021). However, to warrant retrospective relief such as remand, Mr. Ragusa must show that the removal restriction inflicted compensable harm on him. *Collins*, 141 S. Ct. at 1789.

The Commissioner argues that Mr. Ragusa has not shown that the removal restriction actually caused him harm for two reasons: (1) the ALJ who issued the final decision denying Mr. Ragusa's claim was not appointed by a Commissioner subject to Section 902(a)(3)'s removal restriction; the ALJ had his appointment ratified by an Acting Commissioner of Social Security—whom the President could have removed from that role at will, at any time (ECF No. 17 at 5–7), and (2) Mr. Ragusa cannot show that Section 902(a)(3)'s removal restriction inflicted compensable harm on him (*Id*. at 8–10).

*Ratification of the ALJ's Appointment*

Mr. Ragusa does not contradict the Commissioner's claim that "the ALJ who issued the final decision denying Plaintiff's claim was not appointed by a Commissioner subject to Section 902(a)(3)'s removal restriction. Rather, the ALJ had his appointment ratified by an Acting Commissioner of Social Security—whom the President could have removed from that role at will, at any time." *Id*. at 5. In *Perez-Kocher*, Magistrate Judge Kidd ruled in favor of the commissioner on the same argument:

> In *Collins*, the Supreme Court addressed the removal of an Acting Director and found that "if the statute does not restrict the removal of an Acting Director, any harm resulting from actions taken under an Acting Director would not be attributable to a constitutional violation." *Collins*, 141 S. Ct. at 1781. Section 902(a)(3) restricts only the removal of the Commissioner and does not reference an acting Commissioner. As such, the Acting Commissioner's appointment was constitutional. *See id*. at 1782 ("When a statute does not limit the President's power to remove an agency head, we generally presume that the officer serves at the President's pleasure") (finding that the Recovery Act's removal statute does not extend to an Acting Director). Thus, Acting Commissioner Nancy Berryhill was not subject to the unconstitutional

removal provision on which Plaintiff bases his claim, and any ratification of an ALJ by Nancy Berryhill would make that appointment constitutional. *Boger v. Kijakazi*, No. 1:20-cv-331, 2021 WL 5023141, at *n.4 (W.D.N.C. Oct. 28, 2021) (unpublished) ("Indeed, [the p]laintiff's constitutional 'removal restriction' argument is likely not even applicable to this case because [the] ALJ [in question] was appointed by an Acting Commissioner of Social Security who could be removed from that office at the President's discretion.").

2021 WL 6334838, at *6. Here, like in *Perez-Kocher*, the ALJ's appointment was ratified by the Acting Commissioner of Social Security. "Therefore, even if the ALJ was appointed by Commissioner Saul, that appointment was later ratified by the Acting Commissioner, who was not subject to the unconstitutional structure. Therefore, the ALJ's appointment, as ratified, is valid." *Id*. It follows that Section 902(a)(3) did not affect Mr. Ragusa's case, thus eliminating any nexus between the removal restriction and the alleged harm. For that reason alone, and in keeping with the requirements for remand outlined in *Collins*, I find that Mr. Ragusa's constitutional claim fails.

   *Compensable harm*

   The Commissioner further argues that under *Collins*, Mr. Ragusa "cannot show that the removal restriction 'inflict[ed] compensable harm' on him." ECF No. 17 at 8. The Commissioner is correct in its argument. Mr. Ragusa has not argued or alleged that then-Commissioner Saul's unconstitutional appointment and tenure resulted in compensable harm to Mr. Ragusa. Instead, Mr. Ragusa argues that "[t]he government deprived [Mr. Ragusa] of a valid administrative adjudicatory process." ECF No. 16 at 5. However, as discussed above, that is not the case here where the ALJ presiding over Mr. Ragusa's claim had his appointment ratified by the Acting

Commissioner who was not subject to the unconstitutional removal provision. Thus, the ALJ's hearing and decision constitutes a valid administrative adjudicatory process. Furthermore, Mr. Ragusa's contention regarding his purported injury is conclusory. Magistrate Judge Lammens addressed a similar argument regarding compensable harm from the plaintiff in *Vickery v. Comm'r of Soc. Sec.*, No. 5:21-cv-122-PRL, 2022 WL 252464, at *4 (M.D. Fla. Jan. 26, 2022), and I agree with his reasoning and conclusion. There, the plaintiff's alleged injuries were as follows:

- She did not receive a constitutionally valid hearing and adjudication from an ALJ to which she was entitled.
- She did not receive a constitutionally valid decision from an ALJ to which she was entitled.
- She received an unfavorable decision from this constitutionally illicit ALJ adjudication process.
- She did not receive a constitutionally valid process from the SSA's Appeals Council to which she was entitled.
- She did not receive a constitutionally valid determination by the Appeals Council to which she was entitled.

*Id.* Judge Lammens found the alleged specific injuries to be insufficient:

> However, in addition to not being pled in the complaint, Plaintiff's contentions regarding her purported injuries are conclusory. She must set forth facts showing plausible harm as a result of the Commissioner's statutory removal protections. In this instance, following the examples set forth in *Collins*, there are no allegations to suggest an effort by the President to remove the Acting Commissioner that were rebuffed by 42 U.S.C. § 902(a)(3). Because Plaintiff has not shown that she was injured by the removal protection provision she cannot demonstrate that the provision itself "inflict[ed] compensable harm" on her. *Collins*, 141 S. Ct. at 1789; *see also Tibbetts v. Comm'r of Soc. Sec.*, No. 2:20-CV-872-SPC-MRM, 2021 WL 6297530, at *6 (M.D. Fla. Dec. 21, 2021) ("[E]ven assuming arguendo that the removal provision is unconstitutional, it would not necessitate a rehearing of Plaintiff's claim because the provision is severable and there is no evidence to suggest a nexus between the removal provision and a compensable harm to Plaintiff.").

This issue is not an issue of first impression. This Court and other district courts throughout the country have decided this issue in the same or similar context in recent months and have come to the same conclusion for the same reasons. In *Tibbetts v. Comm'r of Soc. Sec.*, No. 2:20-CV-872-SPC-MRM, 2021 WL 6297530, at *6 (M.D. Fla. Dec. 21, 2021), this Court found that, even assuming 42 U.S.C. § 902(a)(3)'s removal provision is unconstitutional, "the removal provision does not necessitate remand or a rehearing of Plaintiff's claim." Similarly, in *Perez-Kocher v. Comm'r of Soc. Sec.*, No. 6:20-CV-2357-GKS-EJK, 2021 WL 6334838, at *4 (M.D. Fla. Nov. 23, 2021), this Court found that, because the plaintiff could not establish that the tenure provision caused compensable harm, the plaintiff had failed to state a claim upon which relief could be granted.

Further, in *Benavidez v. Kijakazi*, No. CV 20-990 SCY, 2021 WL 6062715, at *4 (D.N.M. Dec. 22, 2021), the court granted the Commissioner's motion to dismiss Plaintiff's constitutional challenge based on *Selia Law LLC*, finding that the plaintiff had not sufficiently alleged facts showing plausible harm caused by the removal provision. Similarly, in *Nathanial H. v. Kijakazi*, No. 6:19-CV-01280-AA, 2021 WL 5921377, at *6 (D. Or. Dec. 15, 2021), the court held that, even though the removal restriction of Section 902(a)(3) violated the separation of powers, it did not independently require reversal of the ALJ's decision. In reaching that conclusion, the court found that the removal restriction did not render the Acting Commissioner's appointment void or invalidate the Acting Commissioner's authority. *Id.* at *5. The court also rejected plaintiff's arguments (similar to Plaintiff's here) that he suffered various injuries, such as deprivation of his right to a constitutional decision, due to the unconstitutional nature of the removal restriction. *Id.* at *6.

And in a recent case with similar facts to the instant case, *Helms v. Comm'r of Soc. Sec.*, No. 3:20-CV-589-MOC, 2021 WL 5710096, at *3 (W.D.N.C. Dec. 1, 2021), the court granted the Commissioner's motion for summary judgment and determined that even if plaintiff had somehow been injured by the ALJ's decision, the ratification of the ALJ's appointment by Acting Commissioner Berryhill "adequately cured any such injury," noting that the Acting Commissioner was not protected from removal from office. The court also found that it was implausible that the Commissioner's protection from removal from office, "whether constitutional or not," could have affected the ALJ's decision. *Id.*

Notably, Plaintiff has not cited a single case in which a court held that the removal restriction in Section 902(a)(3) requires reversal of an ALJ's decision. *See also Nathanial H. v. Kijakazi*, 2021 WL 5921377 at *6 n. 4

("Plaintiff does not cite, nor has this court found, any decision from another court that has reached a different conclusion on the merits of a plaintiff's constitutional claim regarding section 902(a)(3).").

*Id.* at* 4–5.

As in *Vickery*, Mr. Ragusa has neither shown a nexus between the removal restrictions and his claim, nor has he plausibly alleged that the statutory tenure protection affected the ALJ's decision or caused him compensable harm. The holding of *Collins*, as well as the above cited cases, leads me to recommend that the Court DENY Mr. Ragusa's Motion for Summary Judgment on the grounds that his constitutional rights were violated.[3] Mr. Ragusa does, however, raise a second, substantive argument as to why his Motion for Summary Judgment should be granted and his case remanded for further review by a different ALJ. I will now address that argument.

## II.    Whether the ALJ's Conclusion that Jobs Exist in Significant Numbers in the National Economy is Supported by Substantial Evidence

At step five of the sequential evaluation process, the Social Security Administration has the burden to show that there exist other jobs in the national economy besides a plaintiff's past relevant work that he can perform given his impairments. *See Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir.

---

[3] To reinforce its position that Mr. Ragusa's constitutional rights were not violated by the removal restriction, the Commissioner also argues that the rehearing request should be denied under the harmless error doctrine, the *de facto* officer doctrine, the rule of necessity, and due to "broad prudential considerations." ECF No. 17 at 10–14. However, because I find Mr. Ragusa's constitutional rights were not violated and rehearing is not warranted on other, more compelling, grounds, I need not address the supplemental arguments made by the Commissioner.

2018); 20 C.F.R. §§ 404.1520(a), 416.920(a). In determining whether a job exists in sufficient numbers to exist in the national economy, the Social Security Administration does not tally the number of job openings at a given time, but rather calculates an *approximate* number of positions that exist. *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1280 (11th Cir. 2020). The ALJ can take administrative notice of job information available from various governmental publications, including the Dictionary of Occupational Titles ("DOT"), published by the Department of Labor. 20 C.F.R. §§ 404.1566, 416.966. The ALJ may also rely on the knowledge and expertise of the VE. *Washington*, 906 F.3d at 1360 ("[T]he ALJ can consider both jobs data drawn from the DOT as well as from the testimony of the VE in making this determination."). The ALJ must identify the specific jobs that the plaintiff can perform and that finding must be supported by substantial evidence. *Teague v. Comm'r of Soc. Sec.*, 743 F. App'x 410, 411 (11th Cir. 2018). As Judge Maynard thoroughly described in *Wickline v. Saul*,

> Estimating the number of jobs in the national economy is not a straightforward task. The DOT groups similar jobs into "occupations" and assigns each occupation a code number. *Goode*, 966 F.3d at 1281. The DOT does not, however, provide statistical information about the number of jobs available in the national economy for each code. *Id*. Instead, a VE must look to other sources to find employment statistics. The Bureau of Labor Statistics—a division of the United States Department of Labor—provides one such source in its Occupational Employment Statistics ("OES") program. *See* Occupational Employment Statistics, Bureau of Labor Statistics, https://www.bls.gov/oes/oes_emp.htm (last visited February 10, 2021). The OES conducts a semiannual survey to produce estimates of employment and wages for specific occupations. *Id*. The OES survey data is compiled by the Standard Occupational Classification (SOC) system, however, not by DOT codes. *Id*. The SOC system groups together detailed occupations with similar job duties such that a single SOC

16

group may contain multiple DOT occupations. *Goode*, 966 F.3d at 1281. Therefore, the number of jobs in an SOC group does not directly correspond to the number of jobs of a single DOT occupation. Because of this, after a VE determines the total number of jobs in an SOC group, she needs to take a further step to approximate how many of that total correspond to the specific DOT job a claimant can perform. *Id*. at 1283.

No. 20-14056-CIV, 2021 WL 862319, at *8 (S.D. Fla. Feb. 16, 2021) (J. Maynard).

*The Equal Distribution Method*

Here, the VE testified that an individual with Mr. Ragusa's characteristics and restraints could perform the requirements of the following representative occupations: housekeeper, sandwich board carrier, and cashier. R. 25. The VE explained that the jobs incidence data he provided at the hearing to the ALJ was "the average" of each SOC group that each of the named occupations' DOT code belonged to. R. 58. For example, if the OES for the particular SOC group that includes housekeeper listed 1,000 jobs, he divided 1,000 by the number of DOTs within that SOC group. So, if 10 DOTs were included in that particular SOC group, then he divided 1,000 by 10 to come up with the reduced number of jobs within that DOT: 100. R. 58–61. This method of calculation is called the equal distribution method. As the VE explained at the hearing and the ALJ acknowledged, the equal distribution method only gives an estimate of the number of jobs available in the national economy. R. 25. There is no way of giving an exact number because jobs open and are filled every day. Using the equal distribution method of estimation, the VE testified that there were approximately 102,000 housekeeper jobs in the national economy, 9,000 sandwich board carrier jobs in the national economy, and 180,000 cashier jobs available in the national economy. R. 25. At the hearing, Mr. Ragusa objected to the

use of the equal distribution method to estimate the jobs available in a particular DOT, however, the ALJ overruled the objection and found the testimony to be reliable. R. 25.

Mr. Ragusa argues in his Motion for Summary Judgment that the ALJ's step five finding was not supported by substantial evidence for three reasons. First, Mr. Ragusa reiterates his objection that the VE's methodology is not a reliable depiction of the available jobs Mr. Ragusa can perform because it does not take into account that each SOC group "can contain a multitude of DOT codes of differing exertional and skill levels." ECF No. 16 at 10.

The Commissioner points out that the VE, who is a qualified expert according to Eleventh Circuit caselaw, used an Eleventh Circuit-approved methodology for associating SOC-based employment numbers to DOT-based job types. ECF No. 17 at 16 (quoting *Goode*, 966 F.3d at 1284 ("one method [for associating SOC-based employment numbers to DOT-based job types] is called the equal distribution method. This method assumes that the total number of jobs that exist for a given SOC group are distributed equally among the number of DOT occupations within that SOC group.")).

In *Goode*, the Eleventh Circuit indicated that in determining the number of available jobs, the VE's analysis should proceed as follows: determine the total number of jobs available in the proper SOC group; determine how many DOT codes are included in that SOC group; estimate the number of available jobs for the particular DOT code; and "provide s*ome explanation* for how he arrived at that latter

number." *Goode*, 966 F.3d at 1284. (emphasis added). Since that is what the VE did in this case, the Commissioner argues that an acceptable methodology, to which the Eleventh Circuit has given its express approval, was used and thus constitutes sufficient, reliable evidence upon which the ALJ could rely to make his findings. *Id*. at 17.

Judge Maynard was faced with a similar question in *Wickline*. Ultimately, she concluded that the VE's use of "Job Browser Pro software" was "an acceptable method of fulfilling the [*Goode*] requirement" that the VE "provide some explanation" for how he arrived at the estimated number of available jobs for the particular DOT code. *Wickline*, 2021 WL 862319, at *9 (citing *Goode*, 966 F.3d at 1284). She further reasoned that

> While acknowledging the non-binding caselaw cited by Plaintiff, the undersigned finds the VEs testimony in this case comports with the Eleventh Circuit's opinion in *Goode* and thus provides substantial evidence to support the ALJ's determination. There is no indication in this case that the VE based her testimony on inaccurate determinations or that she did not also consider her professional experience. Indeed, while testifying about DOT jobs an individual with Plaintiff's age, education, work history, and RFC could perform, the VE explicitly stated that her testimony was "based on my education, training, and knowledge of the labor market." R. 64. The ALJ noted the VE "has experience in vocational rehabilitation services, performing labor market surveys, training other vocational consultants, conducting vocational training programs, and developing knowledge of the Dictionary of Occupational Titles and Selected Characteristics of Occupations." *Id*. at 22; *see also id*. at 240–41. All of this, The ALJ found, "provides ample basis and background to accept her as a vocational expert and allow for her testimony regarding employment numbers in the national economy, pursuant to the regulations and SSRs." *Id*. Despite receiving her qualifications 10 days before the hearing, Plaintiff's counsel did not cross-examine the VE on her qualifications. *Id*.

*Id.* at 10. Similarly, here there is no indication that the VE based his testimony on inaccurate determinations or that he did not also consider his professional experience. The ALJ noted that the VE "has professional knowledge and experience in job placement" and referenced his resume. R. 15, 484–85. This presents ample evidence of the VE's expertise and "allow[s] for h[is] testimony regarding employment numbers in the national economy, pursuant to the regulations and SSRs." *Wickline*, 2021 WL 862319, at *10. Finally, as in the case before Judge Maynard, Mr. Ragusa's counsel did not object to the VE's qualifications, nor did she cross-examine the VE on his qualifications. R. 35–36.

Thus, in keeping with the Eleventh Circuit's holding in *Goode* and Judge Maynard's reasoning in *Wickline*, I find that the VE's employment of the equal distribution method was an acceptable and reliable methodology for the ALJ to rely upon to make his findings at step five.

### *Apparent Conflict*

Mr. Ragusa next argues that the case should be remanded under *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309 (11th Cir. 2021) because the ALJ relied on the VE's testimony that there were a *total* number of 291,000 jobs available that Mr. Ragusa could perform, to find that there was a "significant" number of jobs available to Mr. Ragusa. *Id.* at 13. Mr. Ragusa argues that, under *Viverette*, "additional (or more specific) agency fact-finding is needed, [and therefore,] remand is the appropriate disposition." 13 F.4th at 1318. Mr. Ragusa contends that there is an apparent conflict that needs additional fact-finding to resolve in that the job of

"sandwich board carrier" cannot serve as the basis for the ALJ's step five finding because it demands "constant" exposure to the outside elements, which exceeds the limitations of Mr. Ragusa's RFC. ECF No. 16 at 14. The Commissioner counters that Mr. Ragusa has failed to show that this case should be remanded under the Eleventh Circuit's holding in *Viverette*.

In *Viverette*, the Court found that there was an apparent conflict between the plaintiff's specified limitations and the VE's testimony that he could perform in a document preparer position. 13 F.4th at 1318. There, the VE testified that there were

> 104,000 document preparer positions available nationally, 7,000 final assembler positions available nationally, and 14,000 check weigher positions available nationally. The ALJ referenced this testimony collectively and concluded that Mr. Viverette 'is capable of making a successful adjustment to other work that exists in significant numbers in the national economy.' But she apparently treated the three occupations (one of which we must here assume is off the table) cumulatively for purposes of the "significant numbers" determination, for she did not make any findings about how many jobs were available in the national economy for each of the occupations. In other words, the ALJ did not make a finding about how many final assembler or check weigher jobs were available nationally or whether the number of final assembler and check weigher jobs, either separately or cumulatively, constituted a significant number, absent the document preparer jobs.

*Id*. Thus, the Court found that remand was appropriate where the ALJ's determination that there existed a "significant number" of jobs for plaintiff to perform did not take into account the conflict in the testimony which eroded 104,000 out of the 125,000 jobs supposedly available to the plaintiff. *Id*.

The Commissioner argues that Mr. Ragusa's case is distinguishable from *Viverette* because, unlike the plaintiff in *Viverette*, Mr. Ragusa has not demonstrated a conflict in the testimony to suggest that is incapable of performing one or more of

the three jobs described by the VE, and thus relied upon by the ALJ to make his "significant number" determination. ECF No. 17 at 17.

I agree with the Commissioner that Mr. Ragusa has not demonstrated that an apparent conflict exists between Mr. Ragusa's ability to work as a sandwich board carrier and the limitations included in the RFC. In the RFC, the ALJ found that Mr. Ragusa must "avoid concentrated exposure to extreme cold/heat, humidity, wetness, fumes, odors, gases, dust and other pulmonary irritants . . ." R. 20. The sandwich board carrier job, as quoted by Mr. Ragusa in his Motion, is described as follows: "Wears sign boards and walks in public to advertise merchandise, services, or belief. May distribute handbills to passers-by . . . May wear costume to attract attention . . . May work for labor organization and be designated Picket, Labor Union (nonprofit org.)." ECF No. 16 at 14 (quoting https://occupationalinfo.org/29/299687014.html). *See also* DOT #299.687-014, 1991 WL 672646. The description goes on to specify the following with regard to exposure to the elements:

> Exposure to Weather: Constantly - Exists 2/3 or more of the time
> Extreme Cold: Not Present - Activity or condition does not exist
> Extreme Heat: Not Present - Activity or condition does not exist
> Wet and/or Humid: Not Present - Activity or condition does not exist

*Id*. The fact that this position requires exposure to "weather," is not in apparent conflict with Mr. Ragusa's RFC limitation that he must avoid exposure to "extreme cold/heat." Put differently, I do not find Mr. Ragusa has demonstrated that being exposed to general weather conditions is equivalent to being exposed to extreme cold or heat. Therefore, I do not find that there is an apparent conflict that, under *Viverette*, warrants remand for more specific fact-finding to resolve the conflict.

Furthermore, the Court in *Viverette*, held that remand was warranted not only because of the apparent conflict which eroded 80% of the jobs supposedly available to the plaintiff, but because the ALJ based his "significant" number of jobs determination on the *total* number of jobs available across all three vocations instead of separating them out. Here, as stated, Mr. Ragusa has failed to demonstrate a conflict that would erode any, let alone 80%, of the jobs the ALJ found were available to him. And, even so, the ALJ's decision specifically notes the number of jobs available for each of the representative occupations (housekeeper, sandwich board carrier, and cashier). R. 25. Thus, I recommend that Mr. Ragusa's request for remand on the basis of an apparent conflict in the ALJ's findings and a lack of specific findings from the ALJ be DENIED.

## REPORT AND RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that the District Court **DENY** Plaintiff's Motion for Summary Judgment (ECF No. 16), **GRANT** Defendant's Motion for Summary Judgment (ECF No. 17), and **AFFIRM** the decision of the ALJ.

## NOTICE OF RIGHT TO OBJECT

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Aileen M. Cannon, United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being

served with a copy of this Report and Recommendation. Failure to timely file objections shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016).

**DONE AND SUBMITTED** in Chambers this 15th day of February, 2022, at West Palm Beach in the Southern District of Florida.

BRUCE REINHART
UNITED STATES MAGISTRATE JUDGE